# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, | |
| Plaintiff, | No. 1:23-cv-1887 |
| v. | |
| Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited, and Samuel Lim, | Hon. Manish S. Shah |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF SAMUEL LIM'S MOTION TO DISMISS

Catherine Martinez (admitted *pro hac vice*)
MoloLamken LLP
430 Park Avenue
New York, NY 10022
(212) 607-8152
cmartinez@mololamken.com

Justin V. Shur (admitted *pro hac vice*)
Walter H Hawes IV (admitted *pro hac vice*)
MoloLamken LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2005
jshur@mololamken.com
whawes@mololamken.com

Megan Cunniff Church
Kenneth E. Notter III
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6716
mchurch@mololamken.com
knotter@mololamken.com

*Attorneys for Samuel Lim*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF THE CASE .............................................................................................. 2

    A.    The CFTC's Claims ............................................................................................ 2

    B.    The Allegations Against Mr. Lim ....................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.    The Claims Against Mr. Lim Should Be Dismissed Because the CFTC Has Not Shown That He Is Subject to This Court's Jurisdiction ....................................... 4

II.    Dismissal Is Also Warranted Because the Claims Against Mr. Lim Are Impermissibly Extraterritorial ............................................................................... 6

    A.    The Presumption Against Extraterritoriality Bars the Claims Asserted Against Mr. Lim in Counts I, III, IV, V, and VI ................................................. 6

        1.    The Provisions Asserted in Counts I, III, IV, V, and VI Do Not Apply Abroad ................................................................................. 6

        2.    The Complaint Does Not Plead a Domestic Application of the CEA ................................................................................................ 8

    B.    The CFTC Has Not Pled an Exception That Could Save Its Other Claims .......... 10

CONCLUSION ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

### CASES

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  No. 21-1043, 2023 WL 4239255 (U.S. June 29, 2023) .................................................. 6, 7, 8, 9

*Adv. Tactical Sys. v. Real Action Paintball*,
  751 F.3d 796 (7th Cir. 2014) ................................................................................................... 5

*Calder v. Jones*,
  465 U.S. 783 (1984) ............................................................................................................. 5, 6

*CFTC v. Lake Shore Asset Mgmt. Ltd.*,
  No. 07-cv-3598, 2008 WL 1883308 (N.D. Ill. Apr. 24, 2008) ................................................. 4

*Kiobel v. Royal Dutch Petroleum Co.*,
  569 U.S. 108 (2013) ................................................................................................................. 8

*Loginovskaya v. Batratchenko*,
  764 F.3d 266 (2d Cir. 2014) ..................................................................................................... 7

*Meyer v. Holley*,
  537 U.S. 280 (2003) ................................................................................................................. 5

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010) ................................................................................................................. 7

*North v. Ubiquity, Inc.*,
  72 F.4th 221 (7th Cir. 2023) .................................................................................................... 4

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
  937 F.3d 94 (2d Cir. 2019) ...................................................................................................... 7

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ............................................................................................................... 11

*In re Sheehan*,
  48 F.4th 513 (7th Cir. 2022) ................................................................................................ 4, 5

*Stable Invs. P'ship v. Vilsack*,
  775 F.3d 910 (7th Cir. 2015) ................................................................................................. 11

*Tamari v. Bache & Co. (Lebanon) S.A.L.*,
  730 F.2d 1103 (7th Cir. 1984) ................................................................................................. 7

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................................. 4, 5, 6

*WesternGeco LLC v. ION Geophysical Corp.*,
  138 S. Ct. 2129 (2018) ............................................................................................................ 6, 8

## STATUTES AND REGULATIONS

7 U.S.C. § 2(i) ........................................................................................................................ 7, 10, 12

7 U.S.C. § 6(a) ........................................................................................................................... 6, 7, 8

7 U.S.C. § 6(b) ........................................................................................................................... 6, 7, 8

7 U.S.C. § 6(b)(1) ............................................................................................................................. 8

7 U.S.C. § 6d ..................................................................................................................................... 6

7 U.S.C. § 7b-3 .................................................................................................................................. 6

7 U.S.C. § 13c(a) ........................................................................................................................... 3, 9

17 C.F.R. § 1.6(a) ......................................................................................................................... 3, 10

17 C.F.R. § 37.3 ................................................................................................................................. 6

17 C.F.R. § 42.2 ................................................................................................................................. 6

17 C.F.R. § 48.3 .............................................................................................................................. 6, 8

17 C.F.R. § 166.3 ........................................................................................................................... 6, 12

## OTHER AUTHORITIES

48 Fed. Reg. 35248 (Aug. 3, 1983) ................................................................................................. 12

77 Fed. Reg. 48208 (Aug. 13, 2012) ......................................................................................... 10, 11

85 Fed. Reg. 56924 (Sept. 14, 2020) ............................................................................................... 10

https://www.binance.us/about ........................................................................................................... 2

https://www.binance.com/en ............................................................................................................. 2

## INTRODUCTION

Samuel Lim has no business being a defendant in this case. There is no merit to the CFTC's claims he aided and abetted others' alleged violations of the Commodity Exchange Act and various Commission regulations, and Mr. Lim joins fully in the other Defendants' arguments regarding the many other problems with the complaint. But this Court can dismiss Mr. Lim without reaching the merits because the conduct the complaint ascribes to him took place entirely outside the United States. There is no allegation that Mr. Lim traveled to, conducted activities in, contacted anyone in, or sent anything related to the claims against him to this country. Everything the Commission claims he did or failed to do, he did or failed to do *abroad*. That is fatal to the claims against him for two, independently sufficient reasons.

*First*, to establish this Court's personal jurisdiction over Mr. Lim, the Commission must plead and prove that he expressly aimed his alleged wrongdoing at this country. None of the complaint's allegations get there. Pleading that Mr. Lim "knew" "Binance" was violating U.S. law can't help because what counts for jurisdiction is what the defendant *does*, not what he thinks. Allegations that Mr. Lim encouraged fellow employees to tell U.S.-based users how to circumvent access controls don't move the needle either. Jurisdiction must rest on contacts the defendant makes *himself*—not those made by his co-defendants, employer, or subordinates.

*Second*, the statutes and regulations the Commission claims were violated do not, as a rule, apply abroad. None of the provisions asserted in Counts I, III, IV, V, and VI contain the affirmative indication needed to rebut the presumption against extraterritoriality and reach Mr. Lim's alleged overseas conduct. And the complaint fails to plausibly allege conduct that fits either of the limited exceptions to the express bar on extraterritoriality that covers the swap-related violations asserted in Counts II, III, IV, and VII.

The claims against Mr. Lim should be dismissed.

## STATEMENT OF THE CASE

### A. The CFTC's Claims

Binance.com is the world's premier digital asset exchange, allowing its 140 million users to buy, trade, and hold more than 350 cryptocurrencies. *See* https://www.binance.com/en. In June 2019, Binance.com began the process of removing potential U.S.-based users from its platform. *See* https://www.binance.us/about; Compl. ¶ 81. A separate entity, BAM Trading Services, Inc., was formed in Delaware to operate a dedicated platform for U.S.-based users, called Binance.US. Compl. ¶¶ 22, 93. By September 2019, visitors to Binance.com who did not certify that they were based outside the United States were redirected to Binance.US. *Id*. ¶ 94.

The CFTC claims that Binance.com nevertheless continued to host U.S.-based users. The Commission asserts that the presence of these users meant that the entity Defendants were required to comply with registration requirements and controls that apply under the Commodity Exchange Act to derivatives platforms operating in the United States. Compl. ¶ 7. It alleges that these foreign entities, Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited, violated the Act and Commission regulations by failing to comply with these requirements. *Id*. ¶ 8. It asserts control-person liability against Binance.com's founder, Changpeng Zhao, and accuses the platform's former Chief Compliance Officer, Mr. Lim, of aiding and abetting violations supposedly committed by the foreign entities. *Id.*

### B. The Allegations Against Mr. Lim

The complaint alleges that Mr. Lim joined "Binance" in April 2018 as the platform's first Chief Compliance Officer. Compl. ¶ 18. The complaint claims that this role gave Mr. Lim visibility into the alleged presence of U.S.-based clients on the platform and problems with its compliance measures. *See, e.g., id*. ¶¶ 76, 92, 110, 111. But the CFTC does not claim that Mr. Lim committed a primary violation of the Commodity Exchange Act. Rather, the complaint alleges instead that Mr.

2

Lim is liable, under 7 U.S.C. § 13c(a), "for aiding and abetting *Binance's*" supposed violations of the Act. Compl. p. 71 (prayer for relief) (emphasis added). The only violation ascribed to Mr. Lim directly is a violation of Regulation 1.6, which makes it "unlawful to conduct activities outside the United States, including entering into agreements, contracts, and transactions and structuring entities, to willfully evade or attempt to evade any provision of the Commodity Exchange Act" or related regulations. 17 C.F.R. § 1.6(a).

The CFTC asserts that Mr. Lim "advised, directed, and assisted Binance employees and customers in circumventing compliance controls." Compl. ¶ 18. But it pleads no facts suggesting he had any contact—direct or indirect—with any actual or potential U.S.-based users. The complaint alleges that Mr. Lim was aware that U.S.-based users were accessing Binance.com. *Id.* ¶¶ 76, 92, 100, 110, 111. It alleges that Mr. Lim was aware that others had shared information about how users could mask their location to access the site. *Id.* ¶ 118. And it alleges that Mr. Lim told colleagues "we should get [U.S. users]" onto Binance.com, *id.* ¶ 120, and that "we will push hard" to shift high-volume users from Binance.US to Binance.com, *id.* ¶ 122. But the complaint pleads no facts suggesting Mr. Lim did any of those things himself.

Also missing from the complaint is any allegation that Mr. Lim engaged in any conduct in the United States, or that he otherwise formed a meaningful connection with this country. The only contact the complaint mentions is a letter Mr. Lim allegedly sent to an unidentified state regulator, describing Binance.com's compliance measures at a high level. Compl. ¶ 101. Although the complaint alleges the statements in that letter were inaccurate, it does not allege that the letter had anything to do with the violations asserted in the complaint.

3

# ARGUMENT

### I. THE CLAIMS AGAINST MR. LIM SHOULD BE DISMISSED BECAUSE THE CFTC HAS NOT SHOWN THAT HE IS SUBJECT TO THIS COURT'S JURISDICTION

To obtain a binding judgment against a non-resident defendant in a case like this one, a plaintiff must plead and prove that "the defendant's suit-related conduct" created "a substantial connection" with the United States. *Walden v. Fiore*, 571 U.S. 277, 283-84 & n.6 (2014). The complaint gets nowhere near that threshold.[1]

It is undisputed that no part of Mr. Lim's alleged conduct took place in the United States. There is no allegation that Mr. Lim traveled to, conducted activities within, or sent anything related to the claims against him to anyone in the United States. What little the complaint says about Mr. Lim relates to things he is supposed to have done or failed to do abroad. None of those allegations make the necessary link between Mr. Lim, this country, and this case.[2]

For starters, it does not matter for jurisdictional purposes whether Mr. Lim "knew" that there were allegedly U.S.-based users on Binance.com or whether he believed that this exposed the company to regulatory risk. *See* Compl. ¶¶ 92, 96, 100, 110-112. "The Supreme Court's precedents make clear 'that it is the defendant's ***actions***, not his expectations, that empower a [court] to subject him to judgment.'" *In re Sheehan*, 48 F.4th 513, 523 (7th Cir. 2022), *cert. denied sub nom. Sheehan v. Breccia Unlimited Co.*, 143 S. Ct. 1750 (2023) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564

---

[1] Because there is no allegation that Mr. Lim resides in the United States, there is no argument that he is subject to "general" personal jurisdiction here. *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023). Mr. Lim accordingly addresses the requirements of "specific," or case-linked, jurisdiction only. *See id.* (addressing only "specific" jurisdiction for this reason).

[2] Because the CEA "authorizes nationwide and worldwide service, 'due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or other geographic area.'" *CFTC v. Lake Shore Asset Mgmt. Ltd.*, No. 07-cv-3598, 2008 WL 1883308, at *5 (N.D. Ill. Apr. 24, 2008).

4

U.S. 873, 883 (2011)) (emphasis added). To establish jurisdiction, the Commission must show that Mr. Lim *did* something to "reach out" and "affiliate" himself with the United States. *Id.* at 525.

The letter Mr. Lim allegedly sent to an unidentified state regulator doesn't count. Compl. ¶ 101. "[S]pecific jurisdiction must rest on *litigation-specific* conduct of the defendant" in the forum. *Adv. Tactical Sys. v. Real Action Paintball*, 751 F.3d 796, 801 (7th Cir. 2014). In other words, "only" conduct "related to [the defendant's] allegedly unlawful activity" matters. *Id.* The Commission claims the letter painted a false picture of Binance.com's compliance measures. But it does not tie that to the "wrongdoing" alleged in the complaint. *Sheehan*, 48 F.4th at 525.

The CFTC's assertion that Mr. Lim "advised, directed, and assisted Binance employees and customers in circumventing compliance controls" won't cut it either. Compl. ¶ 18. For one thing, the complaint pleads no facts suggesting that Mr. Lim personally had any contact with any actual or potential "customers"—US-based or otherwise. And even if it had, the minimum-contacts analysis looks to the defendant's contacts "with the *forum* itself and not merely with a person who resides there." *Sheehan*, 48 F.4th at 523 (emphasis added); *see Walden*, 571 U.S. at 285 (similar).

For another, nothing Mr. Lim told his fellow employees could constitute a relevant "contact" because jurisdiction depends on "contacts that the 'defendant *himself*' creates with the forum." *Sheehan*, 48 F.4th at 522 (emphasis added). "[A]dvising" or even "directing" a subordinate to do something is not enough. Personal jurisdiction is about a defendant's "*own* affiliation with" the forum—it cannot rest on the conduct of an employer or a fellow employee. *Walden*, 571 U.S. at 286 (emphasis added); *see Calder v. Jones*, 465 U.S. 783, 790 (1984) (an employee's contacts must be assessed independently of his employer's); *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (a corporation's employees are not agents of the corporation's officers).

5

For the same reason, it makes no difference that Mr. Lim is alleged to have "aided or abetted" violations supposedly committed by others. "Each defendant's contacts with the forum" must be "assessed *individually*." *Calder*, 465 U.S. at 790 (emphasis added). A defendant's relationship with a "third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

## II.  DISMISSAL IS ALSO WARRANTED BECAUSE THE CLAIMS AGAINST MR. LIM ARE IMPERMISSIBLY EXTRATERRITORIAL

Pleading exclusively foreign conduct poses another, independently dispositive problem for the CFTC's claims against Mr. Lim. Most of the statutory provisions and regulations at issue in this case do not apply to activities outside the United States. And the Commission fails to plausibly allege an exception to the rule that governs extraterritorial applications of the rest.

### A. The Presumption Against Extraterritoriality Bars The Claims Asserted Against Mr. Lim In Counts I, III, IV, V, and VI

Counts I, III, IV, V, and VI of the CFTC's complaint allege that Mr. Lim aided or abetted violations of 7 U.S.C. §§ 6(a)-(b), 6d, 7b-3, and 17 C.F.R. §§ 37.3, 42.2, 48.3 and 166.3. Whether those provisions apply to Mr. Lim depends first on whether the statutory "text provides a clear indication of an extraterritorial application." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018) (quotation marks omitted). If that "clear indication" is missing, the CFTC must "establish that the conduct relevant to [the provisions'] focus occurred in the United States." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, No. 21-1043, 2023 WL 4239255, at *3 (U.S. June 29, 2023) (quotation marks omitted).

#### 1. *The Provisions Asserted in Counts I, III, IV, V, and VI Do Not Apply Abroad*

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Abitron*, 2023 WL 4239255, at *3 (quotation marks omitted). Unless "'Congress has

6

affirmatively and unmistakably instructed that' the provision at issue should 'apply to foreign conduct,'" it does not. *Id.* at *4 (quoting *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335, 337 (2016)); *see Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

None of the statutory provisions at issue in Counts I, III, IV, V, and VI contain an express statement of extraterritoriality. *See, e.g.*, *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 730 F.2d 1103, 1107 (7th Cir. 1984) (finding "no direct evidence that Congress intended" the CEA to apply extraterritorially), *abrogated on other grounds by Morrison*, 561 U.S. 247; *Loginovskaya v. Batratchenko*, 764 F.3d 266, 271 (2d Cir. 2014) (concluding that the CEA "is silent as to extraterritorial reach"). Neither do the provisions under which the CFTC promulgated the regulations cited in those counts.

That silence is no accident. When Congress wanted **other** CEA provisions to apply extraterritorially, it said so. Section 2(i) sets out the circumstances under which certain CEA provisions may apply to "activities outside the United States." 7 U.S.C. § 2(i). That "enumerated extraterritorial command" compels the conclusion that the absence of "any analogous directive" in the Act's other provisions means that Congress did not mean for them to apply overseas. *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 103 (2d Cir. 2019) (concluding that other CEA provisions lacked extraterritorial effect for this reason), *cert. denied sub nom. Atl. Trading USA, LLC v. BP P.L.C.*, 141 S. Ct. 113 (2020); *see Morrison*, 561 U.S. at 265 (where a separate provision provides for limited extraterritorial application, "the presumption against extraterritoriality operates to limit that provision to its terms").

Sections 6(a) and (b) do mention foreign activities. But mentioning foreign activities is not the same as "affirmatively and unmistakably instruct[ing]" that a provision governs foreign

7

conduct. *Abitron*, 2023 WL 4239255, at *4. "It is a rare statute that clearly evidences extraterritorial effect despite lacking an express statement of extraterritoriality." *Id.* at *5 (quotation marks omitted). And neither § 6(a) or (b) are it. Section 6(a) expressly regulates conduct "***in the United States***, its territories or possessions" that relates to overseas transactions. 17 U.S.C. § 6(a) (emphasis added). Section 6(b)(1) allows the CFTC to require a "foreign board of trade" to register if it gives U.S.-based users "direct access" to its systems. *Id.* § 6(b)(1); *see* 17 C.F.R. § 48.3 (promulgating the registration requirement). But the conduct that provision regulates is nonetheless domestic—it is the "explicit grant of authority by a foreign board of trade to an identified member or other participant ***located in the United States***" to enter trades directly into the board's systems that requires registration. 7 U.S.C. § 6(b)(1) (emphasis added).

2. *The Complaint Does Not Plead a Domestic Application of the CEA*

Without the unequivocal statement needed to overcome the presumption against extraterritoriality, the CFTC cannot proceed against Mr. Lim unless it shows its claims involve a "permissible domestic application of the statute." *WesternGeco*, 138 S. Ct. at 2136. This "second step" of the extraterritoriality analysis considers whether "the conduct relevant to the statute's focus occurred in the United States." *Id.* (quotation marks omitted). If the "relevant conduct" took place abroad, "then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id*. at 2137.

"Of course, if ***all*** the conduct regarding the [alleged] violations took place outside the United States," there is "no domestic conduct that could be relevant to ***any*** focus" and thus no need to "determine the statute's focus at all." *Abitron*, 2023 WL 4239255, at *4 (emphasis added; quotation marks and original brackets omitted); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013) (application of a statute is necessarily extraterritorial where "all the relevant conduct took place outside the United States"). That is this case. Because ***all*** the conduct the complaint attributes

8

to Mr. Lim took place abroad, the allegations against him are impermissibly extraterritorial no matter what the statute's "focus" is.[3]

It makes no difference that Mr. Lim is accused of aiding or abetting principal violations of the Commodity Exchange Act. For one thing, as the other Defendants explain (and Mr. Lim agrees), the complaint fails to allege *any* violation. For another, the extraterritoriality analysis looks at the conduct relevant to the specific provisions asserted against a particular defendant. *See Abitron*, 2023 WL 4239255, at *5 n.3 ("[T]he two-step analysis applies at the level of the particular provision implicated."). The CEA's aiding-and-abetting provision focuses on the alleged abettor's *own* conduct—"willfully aid[ing], abet[ting], counsel[ing]," and so on, 7 U.S.C. § 13c(a).

Where "Congress has premised liability on a specific action," the plaintiff must establish that "*that* specific action" was done in the United States. *Abitron*, 2023 WL 4239255, at *6 (emphasis added). To plead a domestic violation of the aiding-and-abetting provision, the CFTC accordingly would have to allege aiding-and-abetting conduct in the United States, no matter what else happened here. To be sure, an alleged abettor's conduct is unlawful only if there is proof of a principal violation. But that is not what counts for step two of the extraterritoriality analysis.

In *Abitron*, the Supreme Court considered claims under the Lanham Act, which prohibits using trademarks in a manner likely to confuse consumers. *See* 2023 WL 4239255, at *6. The Court acknowledged that such claims require proof of a "risk of confusion." *Id.* But confusion, the Court explained, "is simply a necessary characteristic of an offending *use*"—it is not the "conduct relevant" to extraterritoriality. *Id.* (emphasis added). Thus, proof of confusion in this country could not make a claim under the Act domestic if the alleged "use" took place overseas. *Id.* Just so here.

---

[3] Alternatively, Mr. Lim joins in the other Defendants' arguments regarding the "focus" of the provisions at issue in Counts I and III-VI, which warrant the dismissal of the claims against Mr. Lim for the same reasons.

9

The CEA's aiding-and-abetting provision prohibits a person from taking action to cause or further someone else's violation of the Act. But, just like consumer confusion in *Abitron*, that other person's violation is merely a necessary characteristic of the offending conduct. So even if the CFTC had alleged a permissibly domestic application of the Act to someone else (and it has not), that could not extend the reach of the Act's aiding-and-abetting provision to Mr. Lim's alleged foreign conduct.

### B. The CFTC Has Not Pled an Exception That Could Save Its Other Claims

A different rule governs the swap-related allegations in Counts II, III, IV, and VII, but they don't apply to Mr. Lim's alleged conduct, either. Under § 2(i), the Commodity Exchange Act's swap-related provisions "***shall not*** apply to activities outside the United States ***unless*** those activities . . . contravene" regulations promulgated "to prevent the evasion of" those provisions. 7 U.S.C. § 2(i) (emphasis added); *see* Compl. ¶ 39 (citing 17 C.F.R. § 1.6(a)). Because the complaint does not plausibly allege that Mr. Lim's activities contravened the only regulation of that kind, Regulation 1.6, Counts II, III, IV, and VII must fail.[4]

Regulation 1.6 makes it "unlawful to conduct activities outside the United States, including entering into agreements, contracts, and transactions and structuring entities, to willfully evade or attempt to evade" regulatory provisions relating to swaps. 17 C.F.R. § 1.6(a); *see* 77 Fed. Reg.

---

[4] Although § 2(i) applies by its terms to "***provisions*** of [the CEA] relating to swaps that were enacted by the Wall Street Transparency and Accountability Act of 2010," 7 U.S.C. § 2(i) (emphasis added), the CFTC has interpreted § 2(i)'s exceptions to confer "authority over ***swap activities***," 85 Fed. Reg. 56924, 56928 (Sept. 14, 2020) (emphasis added). The CFTC has thus waived any argument that these exceptions apply to activities not directly related to swaps.

The Commission also does not mention (and pleads no facts that could support applying) § 2(i)'s only other exception, for activities that "have a direct and significant connection with activities in, or effect on commerce of the United States." None of Mr. Lim's alleged "activities" could possibly meet that threshold. But if the Court considers the question anyway, Mr. Lim joins the other Defendants' arguments explaining why that exception cannot apply. Mr. Lim also joins fully in the other Defendants' arguments regarding the complaint's other pleading failures.

10

48208, 48299 (Aug. 13, 2012) (explaining that the regulation is meant to prevent evasion of "regulatory requirements . . . relating to swaps"). The complaint does not allege that Mr. Lim did anything like that. Rather, the complaint alleges that Mr. Lim "advised, directed, and assisted Binance employees and customers in circumventing compliance controls." Compl. ¶ 18 (albeit without pleading any facts suggesting Mr. Lim had any contact with "customers").

The complaint does not allege that Mr. Lim entered any "agreements," "contracts," or "transactions," or that he structured any "entities"—let alone that he did so to "willfully" evade swap-related regulations. True, starting a list of examples with the term "including" can indicate that the list is not exclusive. But "the context of the term matters." *Stable Invs. P'ship v. Vilsack*, 775 F.3d 910, 917 (7th Cir. 2015) (finding that such a list was, in fact, exclusive). When the listed examples share common characteristics, those characteristics limit the provision's scope. *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) (statute did not apply to individuals because all listed examples were entities).

Here, each of the rule's examples relate to the use of some legal instrument to evade the CEA's requirements. The CFTC's interpretation of the rule reflects that understanding, explaining that it "will look beyond manner in which an instrument, transaction, or entity is documented to examine its actual substance and purpose to prevent any evasion through clever draftsmanship." 77 Fed. Reg. at 48300. Those considerations make no sense applied to the only allegations against Mr. Lim that could even loosely be characterized as "evasive"—namely, encouraging others to coach users on how to avoid access controls on Binance.com.

Tellingly, the complaint does not mention these allegations in the count asserting violations of Regulation 1.6. Rather, the CFTC claims that "purposefully instructing customers to evade compliance controls" and failing to implement required programs violates a ***different*** regulation,

11

Regulation 166.3.  Compl. ¶ 219 (17 C.F.R. § 166.3).  That regulation was promulgated decades before the Wall Street Transparency and Accountability Act Regulation and has nothing to do with "prevent[ing] the evasion of" the Act's provisions.  7 U.S.C. § 2(i); *see* 48 Fed. Reg. 35248, 35304 (Aug. 3, 1983).  With no plausible allegation that Mr. Lim's activities abroad "contravene" any anti-evasion rule or regulation, Section 2(i) requires dismissal of the swap-related allegations in Counts II, III, IV, and VII.

## CONCLUSION

The complaint's claims against Mr. Lim should be dismissed in full.

Dated: July 27, 2023

Respectfully submitted,

/s/ *Justin V. Shur*
Justin V. Shur (admitted *pro hac vice*)
Walter H Hawes IV (admitted *pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2005
jshur@mololamken.com
whawes@mololamken.com

Megan Cunniff Church
Kenneth E. Notter III
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL  60654
(312) 450-6716
mchurch@mololamken.com
knotter@mololamken.com

Catherine Martinez (admitted *pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
(212) 607-8152
cmartinez@mololamken.com

*Attorneys for Samuel Lim*

## **CERTIFICATE OF SERVICE**

I certify that on July 27, 2023, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Justin V. Shur*
Justin V. Shur