# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, | |
| Plaintiff, | No. 1:23-cv-1887 |
| v. | |
| Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited, and Samuel Lim, | Hon. Manish S. Shah |
| Defendants. | |

# REPLY IN SUPPORT
# OF SAMUEL LIM'S MOTION TO DISMISS

Catherine Martinez (admitted *pro hac vice*)
MoloLamken LLP
430 Park Avenue
New York, NY 10022
(212) 607-8152
cmartinez@mololamken.com

Justin V. Shur (admitted *pro hac vice*)
Walter H Hawes IV (admitted *pro hac vice*)
MoloLamken LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2005
jshur@mololamken.com
whawes@mololamken.com

Megan Cunniff Church
Eugene A. Sokoloff
Kenneth E. Notter III
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6716
mchurch@mololamken.com
esokoloff@mololamken.com
knotter@mololamken.com

*Attorneys for Samuel Lim*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARGUMENT | | 2 |
| I. | The CFTC Cannot Make Even a Prima Facie Showing That Mr. Lim Is Subject to This Court's Jurisdiction | 2 |
| | A. The CFTC Fails To Allege that Mr. Lim Had Any Suit-Related Contacts with the United States | 2 |
| | B. Imputing Binance.com's Contacts to Mr. Lim Flouts Binding Precedent | 4 |
| II. | Dismissal Is Also Warranted Because the Claims Against Mr. Lim Are Impermissibly Extraterritorial | 5 |
| | A. The CFTC Cannot Overcome the Presumption Against Extraterritoriality | 5 |
| | B. Mr. Lim's Alleged Foreign Conduct Does Not Violate Regulation 1.6 | 6 |
| CONCLUSION | | 7 |

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023) ................................................................................................6

*Adv. Tactical Sys. v. Real Action Paintball*,
   751 F.3d 796 (7th Cir. 2014) ....................................................................................2

*Bonte v. U.S. Bank, N.A.*,
   624 F.3d 461 (7th Cir. 2010) ....................................................................................6

*Calder v. Jones*,
   465 U.S. 783 (1984) ..................................................................................................4

*Centurion Serv. Grp. v. SBMC Healthcare, LLC*,
   944 F. Supp. 2d 617 (N.D. Ill. 2013) ........................................................................3

*Eighteen Seventy, LP v. Jayson*,
   32 F.4th 956 (10th Cir. 2022) ...................................................................................3

*Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*,
   312 F.3d 833 (7th Cir. 2002) ....................................................................................3

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ..................................................................................................4

*Master Tech Products, Inc. v. Smith*,
   181 F. Supp. 2d 910 (N.D. Ill. 2002) ........................................................................5

*Meyer v. Holley*,
   537 U.S. 280 (2003) ...............................................................................................4, 5

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ....................................................................................2

*PV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) .....................................................................................3

*Riverdale Plating & Heat Treating, LLC v. Andre Corp.*,
   No. 1:15-cv-3255, 2015 WL 5921896 (N.D. Ill. Oct. 9, 2015) .................................5

*Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*,
   750 F.3d 1178 (10th Cir. 2014) ................................................................................3

*Rogers v. City of Hobart*,
   996 F.3d 812 (7th Cir. 2021) ....................................................................................3

*Savanna Grp. v. Trynex, Inc.*,
  No. 1:10-cv-7995, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013)..................................4

*In re Sheehan*,
  48 F.4th 513 (7th Cir. 2022) ..............................................................................3, 4, 5

*Walden v. Fiore*,
  571 U.S. 277 (2014)....................................................................................................2

**STATUTES & REGULATIONS**

7 U.S.C. § 2(i) ...............................................................................................................1, 6, 7

7 U.S.C. § 2(i)(1)....................................................................................................................6

7 U.S.C. § 2(i)(2)....................................................................................................................7

7 U.S.C. § 6(b).................................................................................................................1, 6

17 C.F.R. § 1.6 ........................................................................................................1, 4, 6, 7

17 C.F.R. § 1.6(a).................................................................................................................7

**OTHER AUTHORITIES**

Restatement (Second) of Agency (1958)........................................................................5

# INTRODUCTION

Samuel Lim's opening brief explained why the CFTC failed to plead a prima facie case that he is subject to this Court's jurisdiction. It also explained why, even if Mr. Lim were properly before this Court, none of the provisions the CFTC asserts against him applies to his alleged conduct, all of which supposedly took place overseas. The CFTC's response changes nothing.

The CFTC points to two contacts Mr. Lim allegedly had with people in this country, but it cannot explain how those contacts relate to the claims asserted against Mr. Lim or create a substantial relationship to the United States. The letter the CFTC says Mr. Lim sent a state regulator has nothing to do with its claims that Mr. Lim encouraged his colleagues at Binance.com to coach U.S.-based users to circumvent the company's compliance controls. Mr. Lim's alleged discussions with a U.S.-based company about developing a cryptocurrency are even further removed from the allegations against him. And the CFTC's bid to impute other Binance.com employees' contacts to him flouts Supreme Court and Seventh Circuit precedent.

The CFTC's arguments on extraterritoriality are equally unpersuasive. The CFTC asserts that § 6(b) applies extraterritorially because it refers to foreign boards of trade. That would not be enough in any case, but it is even more obviously wrong given the express statement of extraterritoriality in § 2(i). The CFTC forfeits through silence any response to Mr. Lim's argument that applying the Commodity Exchange Act ("CEA") to his alleged aiding-and-abetting conduct would not qualify as a "domestic application" under the Supreme Court's recent *Abitron* decision. Nor can the CFTC distort Regulation 1.6 to sweep in Mr. Lim's conduct under § 2(i)'s narrow exception for evasive activities.

The claims against Mr. Lim should be dismissed.

# ARGUMENT

I. **THE CFTC CANNOT MAKE EVEN A PRIMA FACIE SHOWING THAT MR. LIM IS SUBJECT TO THIS COURT'S JURISDICTION**

The CFTC never disputes that all Mr. Lim's alleged ***conduct*** occurred abroad. Instead, it rests its case for personal jurisdiction on two insubstantial interactions unrelated to this litigation and the alleged contacts of other Binance.com employees. CFTC Br. 33-34. Because each gambit fails, the CFTC cannot carry its "burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Dismissal is required.

A. **The CFTC Fails To Allege that Mr. Lim Had Any Suit-Related Contacts with the United States**

To anchor jurisdiction, the conduct connecting the defendant to the forum must be "suit-related." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see* Lim Br. 3, 5. Conduct is "suit-related" only if it is tied to the defendant's "allegedly unlawful activity." *Adv. Tactical Sys. v. Real Action Paintball*, 751 F.3d 796, 801 (7th Cir. 2014). The allegedly unlawful activity the CFTC's complaint attributes to Mr. Lim consists of encouraging others to coach users to evade the company's compliance controls.[1] Compl. ¶¶ 18, 118-122. That has nothing to do with either of the contacts the complaint ascribes to Mr. Lim: (1) a letter Mr. Lim allegedly sent to an unidentified state regulator and (2) Mr. Lim's alleged interactions with Paxos, a New York company. CFTC Br. 33-34.

1. Start with the letter. The complaint alleges that the letter misdescribes Binance.com's compliance measures. Compl. ¶ 101. The CFTC contends that this relates "to the suit because a core issue in this case is the ineffectiveness of Binance's compliance controls" and supposed "false

---

[1] The CFTC asserts in its brief that its allegations include "Lim teaching Binance customers how to get around Binance's compliance controls." CFTC Br. 21. But the CFTC cites nothing for that proposition. As Mr. Lim's brief pointed out repeatedly, the complaint does not allege that he had any direct communications with actual or potential U.S.-based customers. Lim Br. 1, 3, 5.

statements" about them. CFTC Br. 34. Not true. *None* of the "allegedly unlawful activity" the complaint ascribes to Mr. Lim involves making false statements. Nor do any of the claims against him turn on the "effectiveness" of Binance.com's controls. Rather, the case against Mr. Lim turns on whether he encouraged others to coach users to *evade* those controls. Compl. ¶¶ 18, 118-122.[2]

That the letter and this suit are both "about" compliance controls is not enough. The CFTC's burden is to link the letter to Mr. Lim's "alleged ***wrongdoing***." *In re Sheehan*, 48 F.4th 513, 525 (7th Cir. 2022) (emphasis added). In *Sheehan*, for example, the defendant sent letters to a forum resident about the general subject matter of the later suit. The Seventh Circuit held those letters could not support personal jurisdiction because they were unrelated to the ***wrongdoing*** that caused "the alleged injury." *Id.* at 526. The court found personal jurisdiction lacking in another case because, even though the defendant sent letters into the forum threatening arbitration, the ***claims*** arose from the arbitration itself, which occurred outside the forum. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 845 (7th Cir. 2002). The letters "were at most tangentially related to the arbitration that [was] the subject of the current dispute and [thus were] insufficient to establish personal jurisdiction." *Id.* Just so here.[3]

---

[2] Even if the letter were suit-related, it still fails to establish the required ***substantial*** relationship with the United States. *See In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022) (letters merely "ministerial actions" and thus "far from sufficient to create minimum contacts"); *Rogers v. City of Hobart*, 996 F.3d 812, 817-18 (7th Cir. 2021) (affirming order holding that phone call to forum resident "insufficient to establish the requisite minimum contacts"); *Centurion Serv. Grp. v. SBMC Healthcare, LLC*, 944 F. Supp. 2d 617, 624 (N.D. Ill. 2013) (St. Eve, J.) ("unspecified amount of email and telephonic communications" insufficient); *PV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) ("a handful of communications" with forum residents too insubstantial); *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 979 (10th Cir. 2022) (emails with forum resident insufficient); *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) (letter and phone call to forum resident insufficient).

[3] The CFTC's lone authority (an out-of-circuit district-court case) proves the point. The communications the defendants directed at the forum in that case ***constituted the allegedly unlawful conduct***—sending allegedly false registration statements in violation of the federal securities laws.

3

2. Mr. Lim's alleged interactions with Paxos have nothing to do with the claims against him either. "[M]islead[ing] Paxos" so that it "would continue to support BUSD," CFTC Br. 33-34, is not among the things Mr. Lim is alleged to have done in violation of the CEA or Regulation 1.6. The CFTC claims that "the promotion of BUSD furthered Binance's [alleged] exploitation of the U.S. market." *Id.* But the CFTC hasn't sued Mr. Lim or the foreign Binance entities for "exploit[ing]" the U.S. market; there is nothing illegal about doing that. Rather, the "allegedly unlawful activity" here is supposedly exploiting the U.S. market ***without complying with the CEA or related regulations***. *Id.* at 7-8. The foreign Binance entities' dealings with Paxos are not even alleged to be related to those supposed failures.

### B. Imputing Binance.com's Contacts to Mr. Lim Flouts Binding Precedent

The CFTC cannot make up for Mr. Lim's lack of relevant forum contacts by pointing to Binance.com's supposed U.S. contacts. *See* Lim Br. 5-6. Personal jurisdiction rests on "contacts that the 'defendant ***himself***' creates with the forum." *Sheehan*, 48 F.4th at 522 (emphasis in original). An employee is "not to be judged according to [his] employer's activities" in the forum; his contacts "must be assessed ***individually***." *Calder v. Jones*, 465 U.S. 783, 790 (1984) (emphasis added); *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (personal jurisdiction over company does not establish personal jurisdiction over its owner).

Without addressing the law, the CFTC argues it is "fair" to impute forum contacts of other Binance.com employees to Mr. Lim because he was "a Binance corporate officer" and "directed Binance employees to . . . solicit and retain U.S. customers." CFTC Br. 34. No. It takes an agency relationship to impute one person's contacts to another, and a company's employees are ***not*** agents

---

CFTC Br. 33 (citing *In re CINAR Corp. Securities Litig.*, 186 F. Supp. 2d 279, 304 (E.D.N.Y. 2002)). Here, by contrast, the CFTC does not even argue that anything about the letter was illegal.

of the company's officers.  *Meyer v. Holley*, 537 U.S. 280, 286 (2003); *see Savanna Grp. v. Trynex, Inc.*, No. 1:10-cv-7995, 2013 WL 4734004, at *8 (N.D. Ill. Sept. 3, 2013) (St. Eve, J.) ("[A] corporate officer may not be liable for corporate acts based purely on his or her status in the corporation.").  An agency relationship exists only if the officer can direct the employee to act— and the employee agrees to act—on the officer's **personal** behalf.  *See Meyer*, 537 U.S. at 286; Restatement (Second) of Agency § 1 (1958) (agency requires "consent by one person to another that the other shall act on his behalf and subject to his control").  The complaint here alleges only that Mr. Lim directed employees to act on **Binance.com's** behalf.  Compl. ¶216.

The CFTC's only response is a district-court decision that predates *Meyer*.  CFTC Br. 34 (citing *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910 (N.D. Ill. 2002)).  That decision took it as given that a company's employees were agents of the company's president.  *See* 181 F. Supp. 2d at 912-13.  *Meyer* and post-*Meyer* case law make clear that is wrong.  *See Riverdale Plating & Heat Treating, LLC v. Andre Corp.*, No. 1:15-cv-3255, 2015 WL 5921896, at *4 (N.D. Ill. Oct. 9, 2015) (refusing to impute corporate forum contacts to "president and sole shareholder").

\* \* \*

With nothing linking Mr. Lim's supposed forum contacts to the claims against him in this suit, the CFTC cannot make even the "colorable or prima facie showing of personal jurisdiction" necessary for jurisdictional discovery.  *Sheehan*, 48 F.4th at 526.  The Court should dismiss all claims against Mr. Lim and deny any motion for jurisdictional discovery against him.

## II. DISMISSAL IS ALSO WARRANTED BECAUSE THE CLAIMS AGAINST MR. LIM ARE IMPERMISSIBLY EXTRATERRITORIAL

Jurisdiction aside, the claims against Mr. Lim are impermissibly extraterritorial for all the reasons he already explained.  *See* Lim. Br. 6-12.  The CFTC's jumbled response ignores statutory text, Mr. Lim's arguments, and settled legal principles.  For this reason too, dismissal is warranted.

## A. The CFTC Cannot Overcome the Presumption Against Extraterritoriality

The CFTC flunks both steps of the Supreme Court's extraterritoriality analysis. *See* Lim. Br. 6-10. Step one is straightforward. Congress knows how to say that a provision "should apply to foreign conduct" when it wants to. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417-18 (2023) (quotation marks omitted). For that reason, it is "'a rare statute'" that satisfies step one without "'an express statement of extraterritoriality.'" *Id.* at 420.

The CFTC claims that § 6(b) meets that standard because it regulates "foreign board[s] of trade." CFTC Br. 36-38. Not good enough. Even "an express statutory reference" to Congress's power to regulate "'foreign commerce'" cannot "rebut the presumption [against extraterritoriality]." *Abitron*, 600 U.S. at 421. That goes double here because Congress has already said in § 2(i) which provisions of the CEA *may* apply abroad and under what circumstances. The only plausible inference is that the Act does not otherwise reach overseas. *See* Lim Br. 7-8.[4]

It only gets worse for the CFTC at step two. Where "Congress has premised liability on a specific action," the plaintiff must establish that "*that* specific action" was done in the United States. *Abitron*, 600 U.S. at 423 (emphasis added). That is so no matter what the statute's "focus" is. *Id.* As explained, the CFTC never alleged that Mr. Lim engaged in *any* conduct that would subject him to liability under the relevant provisions. Lim Br. 8-10. The CFTC's failure to address the argument in its brief concedes the point. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

---

[4] Neither the complaint nor the CFTC's brief suggests that 7 U.S.C. § 2(i)(1) applies to the claims against Mr. Lim. *See* Lim Br. 10 & n.4; CFTC Br. 38-39; *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failing to respond to an argument raised in motion to dismiss concedes the point). Out of caution, Mr. Lim nevertheless joins the other Defendants' arguments explaining why that requirement is not met and the exception of 7 U.S.C. § 2(i)(1) does not apply.

6

## B. Mr. Lim's Alleged Foreign Conduct Does Not Violate Regulation 1.6[5]

The CFTC cannot avoid the extraterritoriality problem by invoking § 2(i). *See* Lim Br. 10-12. That provision "shall ***not*** apply to activities outside the United States ***unless*** those activities . . . contravene" regulations promulgated "to prevent the evasion of" the CEA's swap-related provisions. 7 U.S.C. § 2(i) (emphasis added). The only regulation of that kind is Regulation 1.6, and the CFTC does not claim that Mr. Lim's supposed "evasive activities" violated that regulation.[6] For good reason—Regulation 1.6 prohibits "conduct[ing] activities outside the United States, including entering into agreements, contracts, and transaction and structuring entities, to willfully evade or attempt to evade" the CEA's swap-related provisions. 17 C.F.R. § 1.6(a). The CFTC does not allege that Mr. Lim did anything like that. *See* Lim Br. 10-12.

The CFTC denies that Regulation 1.6 requires an evasive agreement, contract, or transaction. CFTC Br. 19. That is irrelevant because, again, the complaint does not allege that ***any*** of the activities the CFTC points to in its brief violated Regulation 1.6. It is also wrong, as Mr. Lim explained. Lim Br. 10-12. The text and the CFTC's own prior interpretations of the regulation's scope refute the CFTC's made-for-litigation attempt to stretch Regulation 1.6 to cover the conduct ascribed to Mr. Lim. With no plausible allegation that Mr. Lim violated Regulation 1.6, the CFTC cannot use § 2(i)'s exception to rescue its extraterritorial claims against Mr. Lim.[7]

---

[5] Mr. Lim also joins in the foreign Binance entities' and Mr. Zhao's arguments on reply as to why Regulation 1.6 does not save the CFTC's claims. Binance Reply at 10-11.

[6] The CFTC instead claims that those supposed activities violated ***different*** regulations. *See* Compl. ¶¶ 219, 226. Because none of those regulations was promulgated "to prevent the evasion of" the CEA's swap-related provisions, none can satisfy § 2(i)(2)'s criteria for extraterritoriality.

[7] Even if Regulation 1.6 could defeat the presumption against extraterritoriality, it would save only Count VII. The CFTC responds with a two-sentence, citation-free paragraph claiming that Regulation 1.6 defeats Mr. Lim's extraterritoriality arguments for ***every claim*** against him. CFTC Br. 44. That makes no sense. Section 2(i) applies only to "those activities" that "contravene"

**CONCLUSION**

The complaint's claims against Mr. Lim should be dismissed in full.

Dated: October 23, 2023

Respectfully submitted,

/s/ *Justin V. Shur*
Justin V. Shur (admitted *pro hac vice*)
Walter H Hawes IV (admitted *pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2005
jshur@mololamken.com
whawes@mololamken.com

Megan Cunniff Church
Eugene A. Sokoloff
Kenneth E. Notter III
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6716
mchurch@mololamken.com
esokoloff@mololamken.com
knotter@mololamken.com

Catherine Martinez (admitted *pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
(212) 607-8152
cmartinez@mololamken.com

*Attorneys for Samuel Lim*

---

Regulation 1.6. It is not "in for a penny, in for a pound." Because Count VII is the ***only*** count that mentions Regulation 1.6, Compl. ¶¶232-236, the rest of the complaint would still fall.

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2023, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Justin V. Shur*
Justin V. Shur