## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

           Plaintiff,

    v.

CHANGPENG ZHAO, BINANCE HOLDINGS
LIMITED, BINANCE HOLDINGS (IE)
LIMITED, BINANCE (SERVICES) HOLDING
LIMITED and SAMUEL LIM

           Defendants.

CIVIL ACTION NO: 1:23-cv-01887

Hon. Manish S. Shah

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT SAMUEL LIM

### I.    INTRODUCTION

On March 27, 2023, Plaintiff Commodity Futures Trading Commission ("Commission"

or "CFTC") filed a Complaint against Defendants Changpeng Zhao ("Zhao"); Binance Holdings

Limited ("Binance Holdings"), Binance Holdings (IE) Limited ("Binance IE"), and Binance

(Services) Holdings Limited ("Binance Services") (collectively "Binance Entity Defendants" or

"Binance"); and Samuel Lim ("Lim") (collectively "Defendants") seeking injunctive and other

equitable relief, as well as the imposition of civil penalties, for violations of the Commodity

Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations")

promulgated thereunder, 17 C.F.R. pts. 1–190 (2022).

### II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Lim

without a trial on the merits or any further judicial proceedings, Lim:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

    (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2022), relating to, or arising from, this action;

    (b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

    (c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

    (d) Any and all rights of appeal from this action;

8. Acknowledges that the Commission is the prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small Business

Regulatory Enforcement Fairness Act of 1996 specified in subparts (a) and (b) of paragraph 7 above;

9. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Lim now or in the future resides outside the jurisdiction of this Court;

10. Agrees he will not oppose enforcement of this Consent Order on the grounds, if any exist, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

11. Agrees that neither he nor any of his agents or persons under his authority or control shall take any action or make any public statement, including any statement on social media: (i) denying, directly or indirectly, any allegations in the Complaint and/or the Findings of Fact and Conclusions of Law in this Consent Order; *or* (ii) creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Lim's: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Lim shall comply with this agreement and shall undertake all steps necessary to ensure that all of his agents and/or persons under his authority or control understand and comply with this agreement;

12. By consenting to the entry of the Consent Order, Lim neither admits nor denies the allegations of the Complaint or any Findings of Fact or Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which he admits;

13. Consents to the use of the Findings of Fact and Conclusions of Law in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the

Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14. Does not consent, however, to the use of this Consent Order, or the Findings of Fact and Conclusions of Law herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Consent Order;

15. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek legal or equitable remedy against Defendant Lim in any other proceeding.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A. Findings of Fact**

**The Parties to this Consent Order**

16. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17. Defendant Samuel Lim was hired in April 2018 as Binance's first Chief Compliance Officer ("CCO") and remained in that role until at least January 2022. Lim resides in Singapore. Lim has never been registered with the Commission in any capacity.

**The Binance Trading Platform**

18. Binance is the world's largest centralized digital asset exchange. From at least July 2019 to March 27, 2023 (the "Relevant Period"), dozens of corporate entities incorporated in numerous jurisdictions around the world, including the Binance Entity Defendants, have operated the Binance platform as a common enterprise. At times, at least certain of those entities, including Binance Holdings, Binance IE, and Binance Services have commingled funds, relied on shared technical infrastructure, and engaged in activities to collectively advertise and promote the Binance brand.

19. Lim knew that Binance's reliance on a maze of corporate entities to operate the Binance platform is deliberate, and was designed to obscure the ownership, control, and location of the Binance platform.

**Products**

20. Beginning no later than July 2019, Binance, under Zhao's direction and control, began offering digital asset derivative products, including futures, options, swaps, and/or leveraged retail commodity transactions in bitcoin (BTC), ether (ETH), litecoin (LTC), and other digital assets that are commodities as defined under Section 1a(9) of the Act, 7 U.S.C. § 1a(9). Throughout the Relevant Period, Binance solicited and accepted orders, accepted property to margin, and operated a facility for the trading of futures, options, swaps, and leveraged retail commodity transactions involving digital assets that are commodities.

21. Beginning in July 2019, Binance offered leverage to retail customers (that is, not eligible contract participants ("ECPs" within the meaning of Section 1a(18) of the Act, 7 U.S.C. § 1a(18))) trading in its spot markets, which generally include its markets for bitcoin ("BTC"),

ether ("ETH"), and other digital assets that are commodities. These leveraged transactions do not result in actual delivery of the digital asset within 28 days of the transaction.

22. Beginning in April 2020, Binance offered a product called "Binance Options."

23. During the Relevant Period, Binance also offered two categories of digital asset derivatives that it calls "futures"—one category, called quarterly futures, is composed of contracts that have pre-determined expiration dates while the other category, called perpetual contracts or simply "perpetuals", is composed of contracts that do not have an expiration date. Binance began offering quarterly futures in or around September 2019. Binance's quarterly futures are futures contracts. Binance has offered perpetual contracts since at least September 2019. Binance's perpetuals are swaps.

### Binance Solicited U.S. Customers

24. During the Relevant Period, Binance actively solicited customers in the United States, including commercially important "VIP" institutional customers, while failing to implement an effective Anti-Money Laundering ("AML") program, Customer Identification Program ("CIP), failing to retain required customer information, and failing to implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations as required by U.S. law. Further, Lim directed Binance's officers, agents and employees to comply with Binance's corporate practice of using communication applications with auto-delete functionality enabled to communicate concerning Binance's U.S. customers.

### Binance Implemented Superficial, Ineffective Compliance Controls and Instructed U.S. Customers To Circumvent Its Compliance Controls

25. For approximately the first two years of its operations, Binance did not take any steps to limit or restrict the ability of U.S. customers to trade on the platform.

26. Beginning in June 2019, Binance added some superficial controls and "Know Your Customer" ("KYC") programs to make it appear that Binance would begin restricting U.S. customer access. But, in reality, U.S. customer presence persisted because Defendants Lim, Zhao, and Binance deliberately allowed U.S. Customers to circumvent Binance's superficial controls and purported "KYC program," by building in work-arounds, exceptions and, as to Defendant Lim specifically, advising, directing, and assisting Binance employees and customers how to circumvent Binance's controls.

27. Further, at various times during the Relevant Period, Binance personnel, often acting at Lim's direction, assisted U.S. VIP customers to create "new" accounts using "new KYC" documentation in order to circumvent Binance's compliance controls.

### Lim Was Aware of U.S. Regulatory Requirements but Ignored Them

28. Internal messages among Zhao, Lim, and other Binance senior managers document that Lim was aware of the applicability of U.S. regulatory and legal requirements since Binance's early days, including the regulatory regime that applies to U.S. financial institutions such as future commission merchants ("FCMs"), and exchanges such as designated contract markets ("DCMs"), swap execution facilities ("SEFs"), and foreign boards of trade ("FBOTs"). Lim repeatedly, in writing, displayed a nuanced understanding of applicable regulatory requirements and the potential for individual liability that may accompany a failure to comply with U.S. law.

29. Despite his awareness of Binance's compliance failures and control inadequacies, and the U.S. regulatory framework that applied to Binance, Lim assured a state financial regulator in the United States that Binance's compliance program "provides for AML/CFT controls to ensure the safe and legitimate use of our platforms" and that Binance "performs customer due diligence (CDD) anytime the company establishes a customer relationship with all customers engaged in

crypto-fiat activity." Months later, Lim acknowledged in writing that Binance does not perform AML screening.

30. Lim and other members of Binance's senior management failed to properly supervise Binance's activities during the Relevant Period and actively facilitated violations of U.S. law, including by assisting and instructing customers located in the United States to evade the compliance controls Binance purported to implement to prevent and detect violations of U.S. law, by allowing customers that had not submitted proof of their identity and location to trade on the platform in violation of Binance's own Terms of Service, and by directing VIP customers with ultimate beneficial owners, key employees who control trading decisions, trading algorithms, and other assets all located in the United States to open Binance accounts under the name of newly incorporated shell companies to evade Binance's compliance controls.

**B.      Conclusions of Law**

**Jurisdiction and Venue**

31. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

32. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because acts and practices in violation of the Act occurred within this District.

### Count I – Lim's Liability for Aiding and Abetting Binance's Execution of Futures Transactions on an Unregistered Board of Trade

33. By the conduct described above and in the Complaint, at various times during the Relevant Period, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and collectively doing business as Binance, and through their officers, employees, and agents, offered, entered into, and confirmed the execution of leveraged retail commodity transactions, and contracts for the purchase or sale of digital assets that are commodities for future delivery; and conducted an office or business in the U.S. for the purpose of soliciting or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, leveraged retail commodity transactions or contracts for the purchase or sale of digital assets that are commodities for future delivery; without conducting its futures transactions on or subject to the rules of a board of trade designated or registered by the CFTC as a contract market and thereby violated Section 4(a) of the Act, 7 U.S.C. § 6(a).

34. At other times during the Relevant Period, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents, including without limitation Lim, violated Section 4(b) of the Act, 7 U.S.C. § 6(b), and Regulation 48.3, 17 C.F.R. § 48.3 (2022), by permitting direct access to its electronic trading and order matching system without obtaining an Order of Registration for a foreign board of trade from the Commission.

35. From July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Lim willfully aided, abetted, counseled, commanded, induced, or procured the acts constituting Binance's violations of 7 U.S.C. § 6(a) and 6(b) and 17 C.F.R. § 48.3, or

acted in combination or concert with any other person in any such violation, or willfully caused an act to be done or omitted which if directly performed or omitted by Lim or another would constitute a violation described in this Count. Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Lim is therefore liable for Binance's violations described in this Count.

### Count II – Lim Aided and Abetted Binance's Illegal Off-Exchange Commodity Options

36. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and collectively doing business as Binance, and through their officers, employees, and agents offered to enter into, entered into, and confirmed the execution of, maintained positions in, or otherwise conducted activities relating to commodity option transactions in interstate commerce that were not executed on any registered board of trade and thus violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2022).

37. From July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Lim willfully aided, abetted, counseled, commanded, induced, or procured the acts constituting Binance's violations of 7 U.S.C. § 6c(b), or acted in combination or concert with any other person in any such violation, or willfully caused an act to be done or omitted which if directly performed or omitted by Lim or another would constitute a violation described in this Count. Pursuant to 7 U.S.C. § 13c(a), Lim is therefore liable for Binance's violations described in this Count.

### Count III – Lim's Liability for Aiding and Abetting Binance's Failure to Register as a Futures Commission Merchant

38. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and collectively doing business as Binance, and through their officers, employees, and agents operated as an FCM by

soliciting and accepting orders for the purchase or sale of commodities for future delivery, swaps, and leveraged retail commodity transactions, and/or by acting as a counterparty in such transactions; and, in connection with these activities, accepting money, securities, or property (or extending credit in lieu thereof) to margin, guarantee, or secure resulting trades on the Binance platform and thus violated Section 4d of the Act, 7 U.S.C. § 6d.

39. From July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Lim willfully aided, abetted, counseled, commanded, induced, or procured the acts constituting Binance's violations of 7 U.S.C. § 6d, or acted in combination or concert with any other person in any such violation, or willfully caused an act to be done or omitted which if directly performed or omitted by Lim or another would constitute a violation described in this Count. Pursuant to 7 U.S.C. § 13c(a), Lim is therefore liable for Binance's violations described in this Count.

### Count IV – Lim's Liability for Aiding and Abetting Binance's Failure to Register as a Designated Contract Market or Swap Execution Facility

40. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents operated a trading system or platform in which more than one market participant has the ability to execute or trade swaps with more than one other market participant on the system or platform, including the trading or processing of swaps on digital assets that are commodities without being registered as a DCM or SEF and thus violated Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2022).

41. From July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Lim willfully aided, abetted, counseled, commanded, induced, or procured

the acts constituting Binance's violations of 7 U.S.C. § 7b-3(1) and 17 C.F.R. § 37.3(a)(1), or acted in combination or concert with any other person in any such violation, or willfully caused an act to be done or omitted which if directly performed or omitted by Lim or another would constitute a violation described in this Count. Pursuant to 7 U.S.C. § 13c(a), Lim is therefore liable for Binance's violations described in this Count.

### Count V – Lim's Liability for Aiding and Abetting Binance's Failure to Diligently Supervise

42. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents while acting as an FCM employed an inadequate supervisory system and failed to diligently perform their supervisory duties, including by: (i) failing to implement an effective Customer Identification Program; (ii) failing to implement effective KYC procedures; (iii) failing to implement effective AML procedures; (iv) failing to ensure that its partners, officers, employees, and agents, lawfully and appropriately handled all commodity interest accounts at Binance; (v) purposefully instructing customers to evade compliance controls; and, (vi) intentionally destroying documents related to illegal conduct, and thus violated Regulation 166.3, 17 C.F.R. § 166.3 (2022).

43. From July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Lim willfully aided, abetted, counseled, commanded, induced, or procured the acts constituting Binance's violations of 17 C.F.R. § 166.3, or acted in combination or concert with any other person in any such violation, or willfully caused an act to be done or omitted which if directly performed or omitted by Lim or another would constitute a violation described in this Count. Pursuant to 7 U.S.C. § 13c(a), Lim is therefore liable for Binance's violations described in this Count.

**Count VI – Lim's Liability for Aiding and Abetting Binance's Failure to Implement Customer Identification Program, and Failure to Implement Know Your Customer and Anti-Money Laundering Procedures**

44. By the conduct described above and in the Complaint Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents failed to implement a Customer Identification Program, KYC policies and procedures, an AML program, failed to retain required customer information, and failed to implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations such as those issued by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") and thus violated Regulation 42.2, 17 C.F.R. § 42.2 (2022).

45. From July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Lim willfully aided, abetted, counseled, commanded, induced, or procured the acts constituting Binance's violations of 17 C.F.R. § 42.2, or acted in combination or concert with any other person in any such violation, or willfully caused an act to be done or omitted which if directly performed or omitted by Lim or another would constitute a violation described in this Count. Pursuant to 7 U.S.C. § 13c(a), Lim is therefore liable for Binance's violations described in this Count.

**Count VII – Lim Evasion**

46. By the conduct described above and in the Complaint, from July 2019 through at least January 2022 and while acting as Binance's Chief Compliance Officer, Defendant Lim, violated Regulation 1.6(a), 17 C.F.R. § 1.6 (2022), by conducting activities outside the United States, including entering into agreements, contracts, and transactions and structuring entities, to willfully evade or attempt to evade provisions of the Act and its Regulations.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

47. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Lim is permanently restrained, enjoined and prohibited from directly or indirectly

   a. offering to enter into, entering into, or confirming the execution of transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (leveraged retail commodity transactions) or contracts for the purchase or sale of digital assets that are commodities for future delivery, and conducting an office or business in the U.S. for the purpose of soliciting, or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, leveraged retail commodity transactions or contracts for the purchase or sale of digital assets that are commodities for future delivery, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a);

   b. permitting direct access to an electronic trading and order matching system in violation of Section 4(b) of the Act, 7 U.S.C. § 6(b), and Regulation 48.3, 17 C.F.R. § 48.3 (2022);

   c. offering to enter into, entering into, confirming the execution of, maintaining positions in, and otherwise conducting activities relating to commodity option transactions in interstate commerce in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2022);

   d. soliciting or accepting orders for the purchase or sale of commodities for future delivery, swaps, or agreements, contracts or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (leveraged retail commodity transactions), and/or by acting as a counterparty in such transactions; and, in or in

connection with these activities, accepting money, securities, or property (or extending credit in lieu thereof) to margin, guarantee, or secure resulting trades in violation of Section 4d of the Act, 7 U.S.C. § 6d;

e.  operating a facility for the trading of swaps on digital assets that are commodities without registering with the CFTC as a designated contract market (DCM) or swap execution facility (SEF) in violation of Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2022);

f.  failing to perform their supervisory duties diligently, including by: (i) failing to implement an effective Customer Identification Program; (ii) failing to implement effective Know-Your-Customer procedures; (iii) failing to implement effective Anti-Money Laundering procedures; (iv) failing to ensure that its partners, officers, employees, and agents, lawfully and appropriately handled all commodity interest accounts at Binance; (v) purposefully instructing customers to evade compliance controls; and (vi) intentionally destroying documents related to illegal conduct, in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2022);

g.  failing to comply with the applicable provisions of the Bank Secrecy Act and regulations promulgated by the Department of the Treasury including the requirements to implement an Anti-Money Laundering program, retain required customer information, and implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations in violation of Regulation 42.2, 17 C.F.R. § 42.2 (2022); and

h.  conducting activities outside the United States, including entering into agreements, contracts, and transactions and structuring entities, to willfully evade or attempt to

evade provisions of the Act and its Regulations in violation of Regulation 1.6,

17 C.F.R. § 1.6 (2022),

or from aiding and abetting such violations.

## V.    CIVIL MONETARY PENALTY

### A.    Civil Monetary Penalty

48. Defendant Lim shall pay a civil monetary penalty in the amount of One Million and Five Hundred Thousand Dollars ($1,500,000) ("Lim CMP Obligation"), within thirty days of the date of entry of this Consent Order.  If the Lim CMP Obligation is not paid in full within thirty days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the unpaid portion of the Lim CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

49. Payment of the Lim CMP Obligation, and any post-judgment interest by electronic funds transfer, shall be made by U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

MMAC/ESC/AMK326
Commodity Futures Trading Commission
6500 S. MacArthur Blvd.
HQ Room 266
Oklahoma City, OK 73169
9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant Lim shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant Lim shall accompany payment of the Lim CMP Obligation, with a cover

letter that identifies Lim and the name and docket number of this proceeding. Defendant Lim shall simultaneously transmit copies of the cover letter and form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and Robert T. Howell, Deputy Director, Commodity Futures Trading Commission, Ralph Metcalfe Federal Building, 77 West Jackson Blvd., Ste. 800, Chicago, IL 60604.

**B.      Provisions Related to Monetary Sanctions**

50. Partial Satisfaction:  Acceptance by the Commission of any partial payment of the Disgorgement Obligation and/or the Lim CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**C.      Cooperation**

51. Defendant Lim shall cooperate with the Commission, including the Commission's Division of Enforcement, in this action and in any current or future Commission civil litigation or administrative matter related to, or arising from, this action.

**VI.      MISCELLANEOUS PROVISIONS**

52. Until such time as Defendant Lim satisfies in full the Lim CMP Obligation under this Consent Order, upon the commencement by or against him of any insolvency, receivership, or bankruptcy proceeding or any other proceeding for settlement of Lim debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Office of the General Counsel
> Commodity Futures Trading Commission

Three Lafayette Centre
1155 21st Street N.W.
Washington, DC 20581

53. Notice: All notices and certifications required to be given by any provision in this

Consent Order, except as to paragraph 52, above, shall be sent certified mail, return receipt

requested and via e-mail as follows:

Notice to the Commission:

Robert T. Howell, Deputy Director
Commodity Futures Trading Commission, Chicago Regional Office
Ralph Metcalfe Federal Building
77 West Jackson Blvd., Ste. 800
Chicago, IL 60604
*RHowell@cftc.gov*

Notice to Lim:

54. Change of Address/Phone: Until such time as Lim satisfies in full the Lim CMP

Obligation, he shall provide written notice to the Commission by certified mail of any change to

his telephone number and mailing address within ten calendar days of the change.

55. Entire Agreement and Amendments: This Consent Order incorporates all of the terms

and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend

or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b)

signed by all parties hereto; and (c) approved by order of this Court.

56. Invalidation: If any provision of this Consent Order or if the application of any

provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the

holding.

57. Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or other provision of the Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

58. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order.

59. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant Lim, upon any person acting under his authority or control, and upon any persons who receive actual notice of this Consent Order, by personal service or otherwise insofar as he or she in active concert or participation with Lim.

60. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

61. Contempt: Defendant Lim understands that the terms of the Consent Order, are enforceable through contempt proceedings and that, in any such proceeding, he may not challenge the validity of this Consent Order.

62. **Agreements and Undertakings:** Defendant Lim shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Samuel Lim without further notice.

IT IS SO ORDERED on this 14th day of December , 2023

_____

**UNITED STATES DISTRICT JUDGE**

**CONSENTED TO AND APPROVED BY:**

PLAINTIFF COMMODITY FUTURES·
TRADING COMMISSION

_____
Candice Haan, Senior Trial Attorney

Date: 11/21/2023

DEFENDANT SAMUEL LIM

_____
**Samuel Lim**

Date: 21 Nov 2023

Joseph Platt (*jplatt@cftc.gov*)
Candice Haan *(chaan@cftc.gov)*
Katherine Paulson (*kpaulson@cftc.gov*)
Elizabeth N. Pendleton
*(ependleton@cftc.gov)*
Scott R. Williamson
(*swilliamson@cftc.gov*)
Robert T. Howell (*rhowell@cftc.gov*)

      Ralph Metcalfe Federal Building
      77 West Jackson Boulevard, Suite 800
      Chicago, Illinois 60604
      (312) 596-0700
      (312) 596-0714 (fax)

**Approved as to Form:**

Justin V. Shur *(jshur@mololamken.com)*
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W., Suite 500
Washington, D.C. 20037
(202) 556-2005
(202) 556-2001 (fax)